ACCEPTED
06-14-00166-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/20/2015 5:08:09 PM
DEBBIE AUTREY
CLERK

## NO. 06 – 14—00166-- CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
5/21/2015 9:38:00 AM
DEBBIE AUTREY
Clerk

IN THE SIXTH DISTRICT COURT OF APPEALS
TEXARKANA, TEXAS

## RODERICK KING
**Appellant,**

**v.**

## THE STATE OF TEXAS
**Appellee**

On appeal from the 188th Judicial District Court of Gregg County, Texas
Trial Court Case No. 43,416-A

## BRIEF OF THE STATE OF TEXAS

## – ORAL ARGUMENT NOT REQUESTED–

**CARL DORROUGH**
**DISTRICT ATTORNEY**
**GREGG COUNTY, TEXAS**

Zan Colson Brown
Texas Bar No. 03205900
Assistant District Attorney
Gregg County, Texas
101 East Methvin St., Suite 333
Longview, Texas  75601
Telephone: (903) 236–8440
Facsimile:  (903) 236–3701
zan.brown@co.gregg.tx.us

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................1

INDEX OF AUTHORITIES.........................................................................2

STATEMENT OF FACTS............................................................................3

SUMMARY OF THE ARGUMENT ............................................................6

ARGUMENT AND AUTHORITY ...............................................................7

  1)  Issue One:  The State proved each element of a family violence
      assault beyond a reasonable doubt. ...........................................................7

      A. A hypothetically correct jury charge is used to measure the
         evidence....................................................................................................10

      B. Appellant's first issue focuses on whether King's hands
         caused the injury to Ms. Dawkins. ..........................................................10

  2)  Issue Two: The prosecutor's argument did not constitute
      reversible error. ...................................................................................13

CONCLUSION AND PRAYER ...................................................................15

CERTIFICATE OF SERVICE ....................................................................17

CERTIFICATE OF COMPLIANCE ...........................................................17

**Federal Cases**

*Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) .8, 9, 10

**State Cases**

*Brooks v. State,* 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) ...............................8

*Brown v. State,* 270 S.W.3d 564 (Tex. Crim. App. 2008).......................................14

*City of Keller v. Wilson,* 168 S.W.3d 802 (Tex. 2005)..............................................9

*Clayton v. State,* 235 S.W.3d 772 (Tex. Crim. App. 2007)......................................9

*Gaddis v. State,* 753 S.W.2d 396 (Tex. Crim. App. 1988)......................................14

*Hooper v. State,* 214 S.W.3d 9,  13 (Tex. Crim. App. 2007) ...................................8

*Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App.1997) ............................9, 11

*Matlock v. State,* 392 S.W.3d 662 (Tex. Crim. App. 2013) .....................................9

*Patrick v. State,* 906 S.W.2d 481 (Tex. Crim. App. 1995).......................................9

*Williams v. State,* 235 S.W.3d 742 (Tex. Crim. App. 2007) ...................................10

**State Rules**

Appellate Procedure, Rule 9 (2012)..........................................................................18

Appellant Roderick Vonkeith King was charged by indictment with intentionally, knowingly, or recklessly causing bodily injury to Joyce Dawkins, a member of his family or household or a person with home he had a dating relationship by striking her with his hand, an offense alleged to have occurred on November 15, 2013, in Gregg County, Texas. CR 7. It was further alleged that he had been previously convicted, in 2010, in Cause Number 2010-1117 in Gregg County Court at Law One, of another family violence assault.

Joyce Dawkins was living in her home with her brother George Sanders and with Appellant Roderick King on November 15, 2013. 5 RR 22, 30. Dawkins and King were in a dating relationship. 5 RR 22. Dawkins felt bad with a stopped-up head and went to bed in the early hours of November 15, 2015. 5 RR 22, 23. King began irritating her by cursing, calling her names and eventually turning on the fan, which exacerbated her congested condition. 5 RR 24. She rose, went to the dining room and began watching television to avoid him. 5 RR 24. He followed her, and tried to force her to go back to bed, and began hitting "toward [her] head" with his hands and she was defending herself by putting her hands up. 5 RR 24, 25, 48. Her injuries included a large knot on her head and on her arm. 5 RR 25. Though she did not seek medical treatment, she testified that it hurt. 5 RR25. She screamed at him not to hit her anymore, words clearly heard by her hard-of-hearing brother in

the next room.  5 RR 24, 35, 37, 38, and 54-55. Her answers on cross-examination regarding the length of time the altercation lasted showed that she was not sure how long it lasted; she said it was more than a minute, "10 to15 minutes,"  "maybe 10 minutes," "it may have been 6 minutes." 5 RR 35-36.  She denied that he was steadily hit her, instead saying "he was hitting and I was trying to get away." 5 RR 36. George Sanders testified that he had been home about 10 or 15 minutes when he heard her scream5 RR 50. He spoke briefly with his sister, went to his room, and after two or three minutes, he heard her scream and came back out to the living room. 5 RR 54.

Another conflict between the testimonies of the siblings concerned whether they had spoken when the brother returned home.  Ms. Dawkins stated she was in bed, heard Mr. Sanders come in, and they did not speak to each other. 5 RR 39. Mr. Sanders said she was in the dining room, he asked her why she was still up, and she responded, "Well, I can't go to bed."  5 RR 53.   She also said she had to go to work. 5 RR 56.  After the conversation, he went to his room and started taking off his shoes and two or three minutes later, he heard her scream and walked back out into the living room and sat down. 5 RR 54.  He did not see any fighting, but when he saw her earlier, she had not had a knot on her head, and when he came back out, he saw it. 5 RR 51, 61.

4

Both Dawkins and Sanders agreed that when Dawkins told King she had called the police, he ran away. 5 RR 43, 60-61. Dawkins told police what happened, and testified to what happened. She visited with King's lawyer about a year after the incident, and signed an affidavit of non-prosecution, but that document did not say that the altercation had not happened. SX 1; 5 RR 45-46,

The knot on Ms. Dawkins' head was observed and photographed by the police. 5 RR 66, 79.

Mr. King pleaded not guilty, and a jury trial was held. 1-7 RR. The jury found him guilty and assessed his sentence at seven years with no fine. 6 RR 36.

## SUMMARY OF THE ARGUMENT

Issue One: Sufficient evidence convinced a rational jury beyond a reasonable doubt that Roderick King hit Joyce Dawkins with his hands; she suffered pain. Her injuries, corroborated by her brother and an officer with a video camera, were consistent with her testimony.

Issue Two: The objection during the prosecutor's argument was two-fold. The judge's ruling was two-fold. The prosecutor made no improper argument and the judge properly overruled the defense attorney's objection to it; nevertheless, as he overruled the objection, in an abundance of caution, the judge reminded the jury that the State had the burden of proof throughout the trial, erasing all possibility of any harm.

## ARGUMENT AND AUTHORITY

**1) Issue One:  The State proved each element of a family violence assault beyond a reasonable doubt.**

Appellant's first point of error is that the evidence is legally insufficient to support the conviction.  See Appellant's Brief at 8.   The standard of review for a sufficiency claim is after assessing all the evidence in a light most favorable to the verdict, whether any rational jury could have found all the essential elements of the offense beyond a reasonable doubt.

In evaluating evidence sufficiency, the appellate courts will review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense charged. A sufficiency review will focus on the quality of the evidence presented. *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010)  (Cochran, J., concurring). As the *Brooks* opinion directs, deference is given to the jury's duty "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), 1979 U.S. LEXIS 10 (1979)).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. Such a charge would be one that

7

accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. .

"The jury may accept or reject any or all of the testimony of any witness if a reasonable juror could do so" or, more generally, "Evidence can be disregarded whenever reasonable jurors could do so." *Matlock v. State*, 392 S.W.3d 662, 673 (Tex. Crim. App. 2013) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005)). However, a reviewing court cannot 'disregard undisputed evidence that allows of only one logical inference.' Since reasonable jurors can reach only one conclusion from it, jurors are not free to disregard it. *Matlock* at 673 (citing *City of Keller* at 814.)

Evidence is sufficient to support a conviction if, after assessing all the evidence in the light most favorable to the verdict, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. 307, 1979 U.S. LEXIS 10 (1979). All evidence, properly or improperly admitted, is reviewed. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish guilt. *Patrick v. State*, 906 S.W.2d 481, 488 (Tex. Crim. App. 1995). The jury alone determines the

8

credibility of witnesses as well as the weight to be attached to their testimony. *Jackson*, 443 U.S. at 319. When the record supports conflicting inferences, the jury is presumed to have resolved the conflicts in favor of the verdict, and such a resolution is accorded deference by the appellate courts. *Id.*

Evidence is insufficient under the *Jackson* standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Jackson*, 443 U.S. at 314, 318; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Evidence is sufficient in this case because (1) the record contains evidence of each element of the assault; (2) the record contains more than a mere "modicum" of evidence probative of each element of the offense; (3) the evidence does not conclusively establish a reasonable doubt; and (4) the acts alleged (that Roderick King struck Joyce Dawkins, a woman with whom he had a dating relationship, with his hand, causing her pain and injury) do constitute the criminal offense charged (Assault Family Violence).

## A. A hypothetically correct jury charge is used to measure the evidence.

Based on the statute and the indictment, a hypothetically correct jury charge in the case at bar contains the following criteria on which to base a conviction: Roderick King, in Gregg County, Texas, on or about November 15, 2013, struck Joyce Dawkins with his hand, causing bodily injury. King and Dawkins lived in the same house, and they were in a dating relationship. A charge with those criteria is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried" as prescribed by the court in *Malik v. State*.

## B. Appellant's first issue focuses on whether King's hands caused the injury to Ms. Dawkins.

The essential elements at issue are whether King struck Dawkins with his hand and she suffered injury. In Ms. Dawkins words, when asked if the defendant hit her with his hands, she answered, "Yes." 5 RR 48. The injuries were recorded on police video. SX 2. Officer Hardee observed the injuries and testified that the video accurately depicted the injuries. 5 RR 66-68.

Both Ms. Dawkins and her brother testified that she had not had the knot on her head before the altercation and she did have it afterward. 5 RR 47-48, 61. Both recalled her telling King not to hit her anymore. 5 RR 35, 51.

The defendant's trial lawyer tried unsuccessfully to get the police officer to testify that she thought Dawkins' head might have been struck by something other than a hand. 5 RR 80-81. He was slightly more successful with the victim, who said she didn't know if the knot came from him hitting her or if her head hit the wall. 5 RR 32-33. She never said he hit her with anything other than his hands, and she testified plainly that he hit her with his hands. 5 RR 48.

It may be significant to note that Ms. Dawkins was a reluctant witness. Although she called police and reported the assault, she later signed an affidavit of non-prosecution. SX 1; 5 RR 44-46. As the State pointed out, however, that affidavit contained no statement that the assault did not occur. 5 RR 45-46. Also, one of the State's first questions to her was, "You're not really thrilled to be here, are you?" to which she answered, "No." 5 RR 21.

Appellant argues on page 13 of his brief that the only evidence "regarding how the injuries to Ms. Dawkins were incurred was the testimony of Ms. Dawkins, herself." This claim discounts the testimony of her brother, George Sanders, that said she did not have the knot on her head when he saw her earlier, and she did have it a few minutes later, after he heard her tell him to stop hitting her. 5 RR 55-56, 61.

11

Although circumstantial, this is corroborative evidence which could have been considered by a reasonable jury.

In addition to the knot on her head, Dawkins suffered bruising to the forearm, also noted and documented by Officer Hardee. 5 RR 67. Officer Hardee explained that such an injury frequently indicates a defensive wound, and could happen when a person was defending herself with her forearms. 5 RR 67. This testimony corroborated Ms. Dawkins' testimony that she never swung back at King, only put her hands up to defend herself. 5 RR 24, 25, 33, 34.

Appellant argues that if she received the knot on her head from having her head striking the wall while they were wrestling around, then the State has not proved what they alleged in the indictment. Appellant's Brief at 13. The State's position is that they proved that he hit her with his hands and it hurt. That was her testimony and her injuries were consistent with her testimony. Even if you believe the defense theory that the knot was caused by her head hitting the wall, the State still has the injury to the forearm that has not been explained other than by the fact that she was defending herself from his blows—with his hands.

Considering all the evidence in the light most favorable to the verdict, a reasonable jury could have believed Dawkins when she said he hit her with his hands and it hurt. Her head was injured and her forearm was injured. Even if her head hit a table or a wall, there is uncontroverted evidence that her forearm injury

12

was caused by his hitting her with his hands. The State's burden was to prove that he used his hands to strike her, and that when he hit her, she felt pain. From the evidence they received, the jury could have believed that the State had proved it beyond a reasonable doubt. It is the jury's duty to reconcile discrepancies in the evidence, and the jury was free to believe some, all, or none of Ms. Dawkins' testimony. The evidence was sufficient and Appellant's first issue should be decided in favor of the State.

**2) Issue Two: The prosecutor's argument did not constitute reversible error.**

Jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State,* 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).

The argument must be considered in context. *Rawls v. State*, 2009 Tex. App. LEXIS 8054, 9-10 (Tex. App. Texarkana Oct. 16, 2009) (mem. op., not designated for publication) (citing *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

The *Gaddis* Court also explained that to constitute reversible error, the jury argument "must be extreme or manifestly improper, or inject new and harmful facts into evidence to constitute reversible error." *Gaddis*, 753 S.W.2d at 398.

**MR. BOTTO:** During jury selection we heard about the DWI, right? And it was about the burden of proof and when you had probable cause and when you had enough to arrest somebody or when someone could be found guilty. And in that example Mr. Tyra said he stumbled because he had a hurt ankle, and then they produced that at trial and showed that to the jury, right?

**MR. TYRA:** I'm going to object, Your Honor. That's an improper comment, and it places the burden on my client to prove his innocence.

**THE COURT**: Ladies and gentlemen, the burden of proof is on the State throughout the entire trial. I'll overrule the objection.

Where in that statement by Mr. Botto does he ever say that the defense has failed to produce evidence or to meet its burden? The judge apparently overruled the objection because Mr. Botto never actually asked the jury to make any deduction from the fact that the defense had not produced evidence of innocence.

In an abundance of caution, however, the judge did remind the jury that the burden was on the State throughout the entire trial.

If the judge had sustained both objections, the cautionary instruction reminding the jury of the burden would have been the appropriate remedy curing the error, so where is the harm?

The Appellant's brief states, "The only logical deduction the jury could make was that the prosecutor's argument was correct—even though it was improper." On the contrary, the jury could have deduced that the judge gave an instruction being requested by part of Mr. Tyra's objection, and overruling the other one because Mr.

Botto never actually uttered a comment that was extreme or manifestly improper, nor did he inject new and harmful facts into evidence.

The ruling, if error, was harmless. The prosecutor made no extreme or manifestly improper statement. He injected no new and harmful facts into evidence. Even if the prosecutor's comment could somehow be called improper, the instruction cured it. Appellant's second issue should also be decided in favor of the State.

## CONCLUSION AND PRAYER

A jury could have reasonably concluded that Roderick King intentionally struck his family or household member Joyce Dawkins, with his hand causing her bodily injury. Although there were some discrepancies in this reluctant victim-witness's testimony, she consistently said he hit her with his hands and it hurt. Her injuries were consistent with her testimony. The jury did not have to believe all of her testimony. Viewing all evidence in a light most favorable to the jury's verdict, the jury believed that he hit her with his hands and she felt pain. The State prays that this Court will defer to the jury's duty "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."

15

The judge overruled at least part of the objection made by the defense to the prosecutor's argument, but he gave the appropriate remedial instruction anyway. The comment by the prosecutor was not extreme or manifestly improper, injected no new and improper facts into evidence. If error occurred, it was harmless. For the foregoing reasons, the State prays that the jury's verdict be affirmed.

The State prays that the conviction be affirmed.

Respectfully Submitted,

/s/*Zan Colson Brown*

Zan Colson Brown
Texas Bar No. 03205900
Assistant District Attorney
101 East Methvin St., Suite 333
Longview, TX 75601
Telephone: (903) 236–8440
Facsimile: (903) 236–3701
E-mail: zan.brown@co.gregg.tx.us

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing has been forwarded to counsel of record by e-service to:

Tim Cone
Box 413
Gilmer, Texas 75644
Timcone6@aol.com

this 20th day of May, 2015.

/s/ *Zan Colson Brown*

Zan Colson Brown
Assistant District Attorney

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing document complies with Texas Rules of Appellate Procedure, Rule 9 (2012) regarding length of documents, in that exclusive of caption, identify of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, it consists of 3,002 words.

/s/ *Zan Colson Brown*

Zan Colson Brown
Assistant Criminal District Attorney